# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

-------------------------------------------------------------------x
IN RE PROCTER & GAMBLE COMPANY    :         Civil Action No. C-1-00-190
SECURITIES LITIGATION              :         (Weber, J.)
-------------------------------------------------------------------x
THIS DOCUMENT RELATES TO       :
ALL ACTIONS                   :
-------------------------------------------------------------------x

## AFFIDAVIT OF SHANDARESE GARR CONCERNING THE REDISTRIBUTION OF THE NET SETTLEMENT FUND

STATE OF NEW YORK  )
                      )  ss.:
COUNTY OF SUFFOLK  )

Shandarese Garr, being duly sworn, deposes and says:

1.     I am an Assistant Vice President for Securities Operations of The Garden City Group, Inc. ("GCG"), which was retained as Claims Administrator in connection with the settlement of the above-captioned litigation (the "Litigation"). I make this affidavit in support of the motion to redistribute the balance of the Net Settlement Fund. I have personal knowledge of the facts stated herein.

### Prior Settlement Fund Distribution by GCG

2.     To implement the Courts Order Authorizing Distribution of Settlement Fund (the "Distribution Order"), dated November 22, 2002, GCG updated its computer database to determine the amount of the Net Settlement Fund to be distributed to each Authorized Claimant.

3.       After recalculating the pro rata distribution amounts for each of the 131,596 Authorized Claimants, listed in Exhibits B and C to the Affidavit of Shandarese Garr (the "2002 Garr Affidavit") which was submitted to this Court on September 27, 2002, by comparing the Aurthorized Claimants Recognized Loss with the dollar value of the Net Settlement Fund at the time of distribution, it was determined that 61,121 claimants and the Procter & Gamble Company Employee Plan (the "P&G Employee Plan") were eligible for a distribution from the Net Settlement Fund.  The GCG staff then prepared 61,121 checks with dollar amounts of $5.00 and above totaling $33,571,898.22 to be distributed to Authorized Claimants and one wire transfer representing 17,003 Authorized Claimants (the P&G Employee Plan), totaling $1,084,441.60.

4.       An additional Authorized Claimant previously deemed ineligible due to an unresolved deficiency, was later determined eligible and was included in the initial distribution of the Net Settlement Fund.  Based on his loss GCG prepared a check in the amount of $6,478.84.  The total number of checks distributed to Authorized claimants was 61,122, totaling $33,578,377.06 and combined with the P&G Employee Plan wire transfer the amount initially distributed to Authorized Claimants totaled $34,662,818.66.

5.       These checks were printed and mailed by prepaid first class mail on December 20, 2002, the "First Distribution", under the supervision of GCG's Manager of Banking.

### Procedures Followed in Handling Unclaimed /UncashedSettlement Checks from the First Distribution

6.       GCG has maintained, in our computer database, a record of the checks that were issued in the First Distribution.  GCG has updated its records of the checks that have been cashed, as well as outstanding replaced, undelivered, and/or uncashed checks. Of the 61,122 checks that were issued, through the end of the six-month time period for checks to be cashed, there were 58,836 checks that were cashed totaling $29,716,977.64.

2

7.    GCG has complied with the Court's November 22, 2002, Distribution Order and has made reasonable attempts to locate the claimants whose checks remained uncashed or were returned as undelivered by the Post Office.   First, GCG conducted address searches for those claimants whose checks were returned as undeliverable from the First Distribution. GCG updated the claimant records with the new addresses and replacement checks were mailed to those claimants. Through May 28, 2003, 568 replacement checks totaling $3,226,069.41 were issued through this process or at the request of payees who needed their check reissued for a variety of reasons.

8.    In addition, GCG staff conducted extensive research to attempt to contact those claimants with uncashed or undelivered checks, as well as institutions with multiple outstanding checks. This process included the mailing of postcards to prompt Authorized Claimants to cash their checks, as well as numerous telephone calls and e-mails in an attempt to reach the appropriate party at the various institutions that moved and/or merged since the distribution.

9.    As a result of GCG efforts identified in ¶¶ 7 and 8 above, through August 28, 2003, GCG staff has been able to identify, update and replace an additional 275 claimant records with checks totaling $68,003.87 for an aggregate of 843.  Per discussion with Class Counsel, no further reissues of First Distribution checks will be made after August 28, 2003.

10.    As of August 28, 2003, there remains a total of 1,443 outstanding replaced, undelivered and/or uncashed checks totaling $567,326.14.

3

11.    GCG has continued to respond to Class Member's inquiries and requests through its contract with Protocol, Inc. ("Protocol"), to handle telephone inquiries concerning the distribution, using "telephone scripts" developed by GCG staff. During this period GCG and/or Protocol has responded to telephone calls from claimants concerning the checks that they received, the Court Approved Plan of Allocation and how their claim was calculated.  The GCG staff also responded to numerous facsimile and/or email requests from claimants concerning other issues relating to the Settlement.

## Procedures To Be Followed in Final Distribution

12.    Subsequent to the First Distribution, GCG received 31 late claims from Class Members that were deemed eligible and at the request of Class Counsel, those claims are being presented to the Court for consideration for payment as a part of this distribution.  Additionally, 39 Class Members whose claims had been previously deemed ineligible, based on the documentation initially provided in support of their claims, re-submitted new documentation that reversed their ineligibility and, at the request of Class Counsel, these claims are also being included for the Court's consideration for payment as a part of this distribution.  The total Recognized Losses for these 70 claimants is $508,840.62.  The breakdown of estimated recovery for these claims is as follows:

|        |                    | **Total Loss** | **Recovery Per Share**[1] |
|--------|--------------------|----------------|---------------------------|
| Period | 01/25/00–2/14/00   | $124,141.24    | $0.58                     |
| Period | 02/15/00–03/06/00  | $125,353.32    | $1.78                     |
| Period | 03/07/00– 06/07/00 | $259,345.86    | $0.05                     |

---
[1] After attorneys' fees.

13.      Attached hereto as Exhibit A is a list of the Authorized Claimants who cashed the checks they received as part of the First Distribution and for the Class Members that filed late claims or provided additional information to satisfy any deficiency in their initial filing after the First Distribution. The breakdown of estimated additional per share recovery for the redistribution is as follows:

|  |  | Recovery Per Share[2] |
|---|---|---|
| Period | 01/25/00–2/14/00 | $0.02 |
| Period | 02/15/00–03/06/00 | $0.08 |
| Period | 03/07/00– 06/07/00 | $0.004 |

14.      To implement such orders as the Court may issue respecting the Final Distribution of the Settlement Funds, the GCG staff will undertake the following tasks:

    a)   prepare checks and check registers, and mail checks by prepaid first class mail;

    b)   issue replacement checks upon request by payee;

    c)   answer inquiries about checks and claim calculations;

    d)   continue its efforts to locate the Authorized Claimants whose checks remain uncashed; and

    e)   retain and subsequently destroy records not less than <u>one</u> year after the distribution of the Net Settlement Fund.

---

[2] This distribution does not include the contingency fund which is being maintained in accordance with ¶11 of the Plan of Allocation.

## Available Funds for the Final Distribution

15.    Following the First Distribution checks totaling $817,470.69 were remitted to the Settlement Fund as duplicate claims were discovered. In addition, one claim submitted by Bear Stearns was determined to have been submitted in error and the check in the amount of $206,141.58 was returned to the Settlement Fund. As of August 28, 2003, there remains $1,590,938.41 in the Net Settlement Fund, of which $205,033.83, represents the outstanding non-stale dated replacement checks from the First Distribution.  Thus, there is approximately $1.3 million remaining for redistribution.  This does not include the balance of the attorneys' fees to be paid to plaintiffs counsel at the conclusion of the Distribution process.  If the late and resubmitted claims which total 70 are now approved by the Court for payment, this amount will be available for distribution to those claimants as well as claimants that received and cashed the checks sent to them in the First Distribution.

16.    GCG will continue its efforts to locate and distribute the remaining amount in the Net Settlement Fund to Qualified Claimants until the distribution of the balance of unclaimed funds is donated to a charity designated by the parties and approved by the Court and expects to provide a status report to this Court, as to the amount of the remaining Net Settlement Fund, if any, in connection with the request of counsel for the parties to donate the balance of the Net Settlement Fund to a charitable or educational organization in accordance with the Stipulation of Settlement. Counsel for the parties has indicated that they intend to file this request in December 2003.

SHANDARESE GARR

Sworn to before me this

28th day of _____August_____, 2003

NOTARY PUBLIC

N\doc\PNG\affid\final082803

ANNE M. FIORE
NOTARY PUBLIC, State of New York
No. 01FI4988154
Qualified in Suffolk County
Commission Expires November 4, 2005

6